FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
FEBRUARY 18, 2021
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 20

In the Matter of Darl John Hehn

Megan Kummer, State's Attorney                    Petitioner and Appellee

v.

Darl John Hehn,                                   Respondent and Appellant

## No. 20190353

Appeal from the District Court of Richland County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Megan E. Kummer, State's Attorney, Wahpeton, ND, for petitioner and appellee; submitted on brief.

Jonathan L. Green, Wahpeton, ND, for respondent and appellant; submitted on brief.

**McEvers, Justice.**

[¶1]   Darl Hehn appeals from a district court order denying his petition for discharge from civil commitment as a sexually dangerous individual. We remanded to the district court for further findings and retained jurisdiction under N.D.R.App.P. 35(a)(3). *In re Hehn*, 2020 ND 226, 949 N.W.2d 848. We conclude the court did not err in holding the State proved Hehn remains a sexually dangerous individual. We affirm the court's order as supplemented by its order entered on remand.

I

[¶2]   Our prior decision in *Hehn*, 2020 ND 226, sets forth the relevant facts and procedural history of this case, which we repeat here only as necessary to resolve the remaining issues.

[¶3]   In November 2018, Hehn petitioned the district court for review and discharge from civil commitment under N.D.C.C. § 25-03.3-18. In September 2019, the court held a hearing on his petition, receiving testimony from the State's expert, Dr. Erik Fox; the independent examiner, Dr. Jessica Mugge; and Hehn. Dr. Fox's October 2018 annual evaluation report was also received into evidence, in addition to transcripts of deposition testimony from other witnesses. Both experts ultimately agreed that Hehn continues to be a sexually dangerous individual. In October 2019, the court entered an order denying his petition, finding clear and convincing evidence showed Hehn continues to be a sexually dangerous individual.

[¶4]   In *Hehn*, 2020 ND 226, ¶ 14, this Court retained jurisdiction under N.D.R.App.P. 35(a)(3) and remanded to the district court with instructions that the court make specific findings of fact on whether Hehn is likely to engage in further acts of sexually predatory conduct and whether Hehn presently has serious difficulty controlling his behavior. On remand the court entered an order on November 24, 2020, and provided additional specific findings supporting its decision that Hehn remains a sexually dangerous individual and

denying his petition for discharge. The parties were given additional time to submit further briefs on appeal. None were received.

## II

[¶5]   Hehn argues that the district court erred in deciding the State met its burden of proving that he remains a sexually dangerous individual and that his continued commitment is unconstitutional. After reviewing the record on appeal and the court's order denying his petition, as supplemented by the findings entered on November 24, 2020, we conclude the court made the necessary findings and they are supported by the record. We summarily affirm under N.D.R.App.P. 35.1(a)(2).

## III

[¶6]   Hehn argues that the experts' use of the State Hospital behavior acknowledgments as a basis, in whole or in part, for his continued civil commitment as a sexually dangerous individual is unconstitutional. He contends that the current write-up procedures in place at the State Hospital deprive him of life and liberty in the absence of due process. Hehn argues he is entitled to due process regarding any behavioral acknowledgments or write-ups he receives at the State Hospital. At the discharge hearing, Hehn sought to exclude the expert's annual report from evidence as a remedy for the alleged due process violation in the write-up procedures.

[¶7]   We have generally said that "[d]ue process claims require a two-step analysis; the plaintiff must show that the state deprived him of some life, liberty, or property interest and that the state's deprivation of that interest was done without due process." *Cockfield v. City of Fargo*, 2019 ND 77, ¶ 9, 924 N.W.2d 403 (citing *Krentz v. Robertson Fire Prot. Dist.*, 228 F.3d 897, 902 (8th Cir. 2000); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). "[P]rocedural due process requires fundamental fairness, which, at a minimum, necessitates notice and a meaningful opportunity for a hearing appropriate to the nature of the case." *Curtiss v. Curtiss*, 2016 ND 197, ¶ 8, 886 N.W.2d 565 (quoting *St. Claire v. St. Claire,* 2004 ND 39, ¶ 6, 675 N.W.2d 175); *see also In re G.R.H.*, 2006 ND 56, ¶ 24, 711 N.W.2d 587. Due process is

flexible and considered on a case-by-case basis, and the totality of the circumstances must be considered in all cases. *State v. Nice*, 2019 ND 73, ¶ 9. 924 N.W.2d 102.

[¶8] Regarding the civil commitment of sexually dangerous individuals, N.D.C.C. ch. 25-03.3 "requires sexually dangerous individuals to be treated in the least restrictive manner necessary to treat the individual and to protect society." *G.R.H.*, 2006 ND 56, ¶ 24. We have specifically discussed the pre-commitment and post-commitment procedures that satisfy due process:

> Under N.D.C.C. ch. 25-03.3, a person alleged to be a sexually dangerous individual is entitled to a panoply of pre-commitment and post-commitment procedures that are sufficient to provide the individual with due process. A person committed as a sexually dangerous individual is entitled to certain post-commitment procedures in N.D.C.C. §§ 25-03.3-17 and 25-03.3-18, including the least restrictive treatment and an annual examination and report to the committing court. At the time of the annual examination, the committed individual has the right to have an expert examine the individual, and, if the individual is indigent, the court shall appoint a qualified expert to examine the committed individual and report to the court. N.D.C.C. § 25-03.3-17(2). The court may order further examination and investigation of the committed individual and the court may set a further hearing at which the committed individual is entitled to be present and to have the benefit of the protections afforded at the original commitment proceeding. N.D.C.C. § 25-03.3-17(4). *See M.D.,* 1999 ND 160, ¶ 28, 598 N.W.2d 799. The executive director may petition a committing court at any time for the discharge of the committed individual. N.D.C.C. § 25-03.3-17(5). The executive director annually shall provide the committed individual with written notice that the individual has a right to petition the court for discharge. N.D.C.C. § 25-03.3-18(1). If a committed individual files a petition for discharge and has not had a hearing under N.D.C.C. §§ 25-03.3-17 and 25-03.3-18 during the preceding year, the committed individual has a right to a hearing on the petition for discharge, at which the committed individual is entitled to be present and to have the benefit of the protections afforded at the original commitment proceeding. A committed individual has a right to

> appeal from an order of commitment or any order denying a petition for discharge. N.D.C.C. § 25-03.3-19.

*G.R.H.*, at ¶ 25. Section 25-03.3-24, N.D.C.C., addresses post-commitment community placement. *See G.R.H.*, at ¶ 26. In *G.R.H.*, at ¶ 27, this Court specifically concluded that "the procedures in N.D.C.C. ch. 25-03.3, which provide a person civilly committed as a sexually dangerous individual with pre-commitment *and post-commitment safeguards* designed to protect the person's liberty interest *as the person proceeds through the treatment process*, satisfy procedural due process." (Emphasis added.)

[¶9]   In this appeal, relying on *Cockfield*, 2019 ND 77, ¶ 17 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) and *Riggins v. Bd. of Regents of Univ. of Neb.*, 790 F.2d 707, 712 (8th Cir. 1986)), Hehn argues that he is entitled to due process regarding any behavioral acknowledgments or write-ups he receives at the State Hospital, comparable to the rights to due process and meaningful opportunity to be heard for public employee in pre- and post-termination proceedings. *See also Loudermill*, 470 U.S. at 542; *Smutka v. City of Hutchinson*, 451 F.3d 522, 526 (8th Cir. 2006). He argues similar due process is required in the State Hospital's procedures because the write-ups serve some basis for his continued civil commitment and confinement.

[¶10]  Hehn asserts the "uncontroverted evidence" shows the State Hospital did not provide him with notice and an opportunity to be heard on the write-ups before depriving him of life, liberty, and property. He contends that for each write-up at the State Hospital, he is entitled to counsel, to provide testimony, to present his case, and to cross-examine witnesses against him. While he concedes the Sixth Amendment does not apply to civil cases, he asserts the legislature has provided similar protections in the civil commitment proceedings. He argues that because the write-ups are used as a basis for his continued civil commitment, due process also demands that a hearing be held on each write-up immediately.

[¶11] The State responds, however, that Hehn's own testimony at the discharge hearing shows an internal "appeal process" already exists at the State Hospital for a person who receives a negative behavioral

4

acknowledgment or write-up. The State contends the due process requirement is met by the annual review hearing.

[¶12] Hehn essentially asserts that if due process and a meaningful opportunity to be heard apply to certain employment termination proceedings, these due process rights should also extend to him in the State Hospital's behavioral acknowledgment or write-up process itself. Hehn argues that this Court should extend such protections to this context because his liberty interest here carries more weight than the property interest in the employment cases and because the write-ups are used to justify his continued civil commitment. He therefore contends that the experts' reliance on them was unreasonable. We are not convinced.

[¶13] Courts have held that "[s]o long as civil commitment is programmed to provide treatment and periodic review, due process is provided." *In re Moen*, 837 N.W.2d 40, 48 (Minn. Ct. App. 2013) (quoting *In re Blodgett*, 510 N.W.2d 910, 916 (Minn. 1994)). Hehn asserts the State Hospital has not provided him with notice and an opportunity to be heard on the write-ups "before it deprives life, liberty, and property." However, the initial deprivation of Hehn's liberty occurred with his initial civil commitment proceedings finding him to be a sexually dangerous individual, and the subsequent annual discharge hearings have provided the requisite due process for his continuing civil commitment. This Court has specifically held that the pre-commitment and post-commitment safeguards provided in N.D.C.C. ch. 25-03.3 protect the person's liberty interest as the person proceeds through the treatment process and satisfy procedural due process requirements. *G.R.H.*, 2006 ND 56, ¶ 27.

[¶14] Although Hehn argues that he is entitled to due process in the State Hospital's write-up procedures, we have held that N.D.C.C. § 25-03.3-13 "requires the executive director to make the decision regarding the appropriate treatment facility or program for a sexually dangerous individual." *Whelan v. A.O.*, 2011 ND 26, ¶ 7, 793 N.W.2d 471 (citing *G.R.H.,* 2006 ND 56, ¶¶ 22, 27 (holding the plain language of N.D.C.C. § 25-03.3-13 authorizes the executive director to decide the least restrictive available treatment program or facility for a sexually dangerous individual and the statute does not violate due process

5

or double jeopardy); *In re B.V.*, 2006 ND 22, ¶¶ 13, 17, 708 N.W.2d 877 (holding N.D.C.C. § 25-03.3-13 does not allow the district court to determine treatment options at an initial commitment hearing, but rather places that determination with the Department of Human Services)); *see also* N.D.C.C. § 25-03.3-01(2) ("'Executive director' means the executive director of the department of human services or the executive director's designee."); N.D.C.C. § 25-03.3-01(12) ("'Treatment facility' means any hospital, including the state hospital, or any treatment facility, including the life skills and transition center, which can provide directly, or by direct arrangement with other public or private agencies, evaluation and treatment of sexually dangerous individuals."). Hehn has not provided this Court with any case, statute, or administrative rule or regulation requiring the State Hospital to provide the due process he contends he must receive in the write-up procedures, which are also presumably part of his treatment.

[¶15] At the discharge hearing, Hehn sought to exclude Dr. Fox's expert report from evidence as a result of the alleged due process violation in the write-up procedures. In admitting the annual report, the following colloquy occurred:

> MS. KUMMER: At this time, petitioner offers Exhibit 2, the Sexually Dangerous Individual Annual Report dated October 1st of 2018 into evidence.
> THE COURT: Any objection to Petitioner's 2?
> MR. GREEN: Yes, Your Honor. I object, and the basis for the objection stems on the ground that at least a chunk, if not a significant portion, of Dr. Fox's report is based upon write-ups that Darl received. The write-ups were received in violation of his due process rights inasmuch as he has not had the opportunity to confront and cross-examine the witnesses against him. He did not have a right to counsel during those write-ups, and he had no rights to appeal, which, of course, would defy him of his right to counsel as well.
> THE COURT: Comments on the objection, Ms. Kummer?
> MS. KUMMER: Certainly.
> Your Honor, I understand Mr. Green's objection, but my argument would be that this wouldn't certainly preclude the Court taking the report into evidence, but would perhaps be an argument

6

as to the weight that the Court would give the evaluation as we move forward and the analysis of the various factors.

THE COURT: All right. I agree with the petitioner's understanding. I think the objection goes to weight rather than admissibility.

You will have the opportunity to cross-examine on the petition and the underlying data and reports and other information that were used as a basis.

So, the objection is overruled.

Petitioner's 2 is received.

(Petitioner's Exhibit 2 received into evidence.)

[¶16] Hehn contends due process requires that he should have been provided an attorney as part of the State Hospital's write-up procedures. To the extent the State Hospital provides an internal "appeals process" for write-ups, Hehn has provided no authority that the Due Process Clause confers a right to counsel at such a proceeding, and we decline to recognize such a right. *See Beaulieu v. Minn. Dep't of Human Servs.*, 798 N.W.2d 542, 549 (Minn. Ct. App. 2011) (declining to hold the Due Process Clause of the Fourteenth Amendment confers a right to appointment of counsel in a civil commitment proceeding when the United States Supreme Court has not so held). While N.D.C.C. § 25-03.3-09 provides respondents the right to legal counsel in commitment proceedings of sexually dangerous individuals, we decline to extend that statutory right to include the State Hospital's internal write-up procedures.

[¶17] Hehn's argument appears to suggest the district court should have excluded Dr. Fox's expert report based on a purported constitutional violation. This Court has previously rejected extending an exclusionary rule outside of the criminal context. *See In re Ebertz*, 333 N.W.2d 786, 788-89 (N.D. 1983) (explaining that while commitment proceedings generally mirror criminal proceedings, "suppression of evidence in criminal cases (exclusionary rule) . . . and other similar 'remedies,' are employed for various given reasons and in most instances inure to the benefit of the defendant[;] [h]owever, if the same 'remedies' were strictly applied to involuntary commitment cases they would produce unwarranted negative results"); *cf. Beylund v. Levi*, 2017 ND 30, ¶ 23, 889 N.W.2d 907 (concluding exclusionary rule did not require exclusion of blood test results in civil administrative license suspension proceedings).

[¶18] Hehn argues on appeal that since he was not afforded a hearing on each write-up, the experts' reliance on them was unreasonable. We have explained, however, that expert witnesses in a commitment proceeding "may base their opinions on any information *reasonably relied* upon by psychologists in determining whether an individual is sexually dangerous." *In re Rush*, 2009 ND 102, ¶ 14, 766 N.W.2d 720 (emphasis added); *see also* N.D.R.Ev. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."); *In re D.V.A.*, 2004 ND 57, ¶¶ 5, 9, 676 N.W.2d 776 (holding expert witness had not unreasonably relied on evidence—including penitentiary records, medical records, conversations with another psychologist, and interviews with the respondent—to form the expert's opinion and that weakness or nonexistence of a basis for the expert's opinion goes to the credibility, and not necessarily to the admissibility of the opinion evidence). Moreover, our rules "envision generous allowance" of expert testimony:

> The rules governing admission of expert testimony envision generous allowance of its use if the witness is shown to have some degree of expertise in the field in which they are to testify, and if the testimony assists the trier of fact to understand the evidence or determine a fact in issue and is qualified as an expert, it will be accepted. . . . [T]he district court's assessment of witness credibility is granted deference, and the district court's discretion in admitting expert testimony will not be reversed unless the district court abuses its discretion by acting in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination.

*In re Loy*, 2015 ND 92, ¶ 17, 862 N.W.2d 500 (citations omitted).

[¶19] On this record, we conclude the experts' reliance on the State Hospital's behavioral acknowledgments or write-ups was not unreasonable. The district court properly determined that Hehn's objection went to the report's weight rather than its admissibility, and the court allowed him "the opportunity to cross-examine on the petition and the underlying data and reports and other

8

information that were used as a basis." The court therefore did not abuse its discretion in admitting the report.

[¶20] Because we have concluded that the pre- and post-commitment procedural safeguards in N.D.C.C. ch. 25-03.3 satisfy due process and that Hehn has not established an additional right to due process in the State Hospital's write-up procedures, we conclude the expert reliance on them was not unreasonable and the district court did not abuse its discretion in allowing the expert's report. We therefore are not persuaded by Hehn's constitutional argument or his proposed remedy to exclude from evidence an expert report that relies on the State Hospital's behavioral acknowledgments or write-ups.

IV

[¶21] We have considered Hehn's remaining arguments and conclude they are unnecessary to our decision or without merit. The district court's orders are affirmed.

[¶22]  Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte